UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
CLERK

3/16/2020 11:23 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

--------------------------------------------------------------x

DELIA HAXTON and THOMAS HAXTON,

      Plaintiffs,

           v.

PL SMITHTOWN, LLC,
COSTCO WHOLESALE CORP., and
JOHN and JAN DOE(S) i-v, Inclusive,

      Defendants.

--------------------------------------------------------------x

Case No.: 17-cv-3979 (SJF)(SIL)
**MEMORANDUM & ORDER**

FEUERSTEIN, S.J., Senior District Judge:

I.    <u>Introduction</u>

      Plaintiffs Delia Haxton ("Delia") and Thomas Haxton ("Thomas"; together with Delia, the "Plaintiffs" or "Haxtons") commenced this action against Defendant Costco Wholesale Corp. (hereafter, "Costco", the "Company" or "Defendant")[1] claiming that because of Costco's negligence in maintaining the entryway to its warehouse located at 3000 Middle County Road in Nesconset, New York (hereafter, "Warehouse"), Delia slipped, fell, and sustained bodily injuries. (*See* Complaint, ECF No. 1-1.) The Defendant denied Plaintiffs' allegations, raising multiple affirmative defenses (*see* Answer (ECF No. 6)). Thereafter, Costco moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (*see* ECF No. 49; hereafter, the "Summary Judgment Motion"), principally arguing that Delia cannot identify the cause of her fall. (*See* ECF No. 49-22; hereafter, "Support Memo".) Plaintiffs opposed said Motion. (*See* ECF No. 50-20; hereafter, "Opposition" or "Opp'n".) For the reasons that follow, the Summary Judgment Motion is GRANTED.

---

[1] By stipulation, Defendant PL Smithtown, LLC was dismissed from this action. (*See* ECF No. 9.) Plaintiffs have not pursued this action against the Doe Defendants.

II.    Background

   *A. Factual Background*[2]

   The subject Warehouse opened in 1987.  (*See* 56.1 Stmt., ¶2.)  On March 7, 2017, at

approximately 10:30 a.m., Delia tripped outside the entranceway to the Warehouse (hereafter,

the "Accident").  (*See id.*, ¶1; *see also id.* at ¶6 ("Plaintiffs were walking toward the [W]arehouse

from the parking lot when [Delia] tripped.").)  At that time: the Warehouse had an asphalt

parking lot that met a concrete sidewalk with a "sloping curb" located approximately 25 feet

from the eastern entranceway of the Warehouse (*see id.*, ¶1); "the concrete sidewalk was

'slightly higher' than the asphalt", with a "slight little edge" (*id.*, ¶3) or "lip" (*id.*, ¶4) of an

approximate height differential of "two fingers" (*id.*, ¶3; *cf.*, 56.1 Counter, ¶3 (acknowledging

"that Thomas . . . described the height differential between the asphalt and the concrete as

approximately 'two fingers' high")); the asphalt and concrete sidewalk were different colors (*see*

*id.*, ¶1); there was no demarcation, such as paint, at the sidewalk's edge (*see* 56.1 Counter, ¶27);

and, there were no customers blocking Delia's view as she approached the entrance (*see* 56.1

Stmt., ¶9).  Delia does not know whether, when she tripped, her foot was on the asphalt or the

concrete; nor does she know with which foot she tripped.  (*See id.*, ¶11; *see also id.* at ¶25

("[Delia] testified that at the moment her foot tripped, she did not know whether it was fully on

---

[2] Unless otherwise stated, the facts are taken from the parties' Rule 56.1 Statements.  (*See*
Costco's Rule 56.1 Statement (ECF No. 49-21); hereafter, "56.1 Stmt."; Plaintiffs' Rule 56.1
Counter Statement (ECF No. 50-19); hereafter, "56.1 Counter"; and Defendant's Rule 56.1
Reply Statement (ECF No. 51-2); hereafter, "56.1 Reply".)  Further, a standalone citation to a
Rule 56.1 Statement denotes that either the parties have, or the Court has, determined the
underlying factual allegation to be undisputed.  Citation to a party's Rule 56.1 Statement
incorporates by reference the party's citation(s), if any.  Exhibits identified by letter are those of
the Defendant and are attached to the Declaration of Sal F. DeLuca, Esq. (*see* ECF No. 49-1),
Defendant's counsel; exhibits identified by number are those of the Plaintiffs and are attached to
the Declaration of Joseph P. Walsh, Esq. (ECF No. 50), Plaintiffs' counsel.  Hereafter, the Court
will reference exhibits by their respective letters or numbers only.

the asphalt, partially on the asphalt and concrete or something else.").) She "did not see what caused her to trip before, or after, the [A]ccident"; all she "recalls seeing was a 'slight puddle,' but she does not know if that had anything to do with [the A]ccident." (*Id.*, ¶12; *cf.*, 56.1 Counter, ¶12 ("*Plaintiff acknowledges she did not see what caused her to trip* before or when she actually fell and that *she recalled seeing a 'slight puddle,' which Plaintiff does not claim had anything to do with her accident.*" (emphasis added)).) Delia "does not know where she tripped," and neither she "nor her husband could point to the [A]ccident location in a photograph of the entrance" to the Warehouse. (*Id.*, ¶14; *cf.*, 56.1 Counter, ¶14 ("Plaintiffs acknowledge [they] do not know 'exactly' where Delia . . . tripped in that neither Delia . . . nor . . . Thomas could point to the precise location at which Delia Haxton's foot made contact with the edge of the sidewalk before falling.").) Further, Thomas did not see what caused Delia to trip. (*See id.*, ¶13.) Similarly, while "Costco Front End Manager Michael Fazio [(hereafter, "Fazio")] responded to the [A]ccident[; h]e does not know where [Delia] tripped." (*Id.*, ¶15.)

On an average daily basis, approximately 2,600 persons enter the Warehouse, and on the day of the Accident, prior to its occurrence, at least 144 Costco members had entered the Warehouse without incident. (*See id.*, ¶5.) Costco had received no complaints regarding the asphalt or concrete; nor had there been prior accidents involving the asphalt, curb or sidewalk in front of the Warehouse. (*See id.*, ¶¶20, 21; *cf.*, 56.1 Counter, ¶20 ("Plaintiffs acknowledge they have been unable to discover any written report or reported complaints to [Costco] about the asphalt or concrete before [Delia]'s accident; however, Plaintiffs do not admit that no such complaints were made"[3]), and ¶21 (acknowledging Plaintiffs' inability to discover evidence of

---

[3]  In contravention of Local Civil Rule 56.1 (d), which requires "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact*, must be followed by citation to evidence* which would be admissible,

prior accidents involving the asphalt, curb or sidewalk in front to the Warehouse, but contending "there is evidence in the form of statements made by COSTCO employees as to prior incidents which incidents may or not have involved injuries" (citing Delia Aff. (ECF No. 50-1 at 1-4), Wendy Aff. (ECF No. 50-1 at 8-9)[4]).) Delia "was very familiar with the layout of the entrance to the [W]arehouse, which ha[d] been the same for many years" since she shopped there "once or twice a month, for approximately 30 years, using the same entrance" (*Id.*, ¶¶7, 8.) "There [were] no code violations at the subject [Warehouse]." (*Id.*, ¶22.)

On March 9, 2017, the Haxtons' daughter, Wendy Haxton ("Wendy"), went to the Warehouse and, among other things, took photographs of its entryway. (*See* Ex. M (Wendy's July 6, 2018 Depo. Tr. (hereafter, "Wendy Depo")) 9:10-25, 12:16-20, 23:9-24:10); *see also* Ex. H (select photographs taken by Wendy on March 9, 2017 of the Warehouse entryway; previously marked on April 18, 2018 as Defendant's Exhibits A-F.[5]) In Depo. Photo C (*see* Ex. H (ECF No. 49-9 at 4); Ex. 4[6] (ECF 50-5 at 2)(same photograph)) (hereafter the "Relevant Photo"), Wendy claims there was a white stain depicted (hereafter, the "White Mark"). (*See* Wendy Depo 28:14-19; *see also id.* at 28:19 (testifying that the White Mark is also seen in Depo. Photos E & F).) The Company disputes that the Warehouse was in the condition depicted in the Depo.

---

set forth as required by Fed. R. Civ. P. 56(c)" (emphasis added), this Counter Statement is made without any citation to the record.

[4] (*See infra* at Part III.B at pp. 15-16 (addressing the Court's consideration of Delia's, Thomas's, and Wendy's Affidavits).)

[5] (*See* Wendy Depo. 23:9-17.) To avoid confusion and unless otherwise stated, hereafter, the Court will identify these exhibits individually as "Depo. Photo [relevant letter]" and collectively as the "Depo. Photos".

[6] (*See also* Walsh Decl., ¶5 ("The photograph marked as Exhibit 4[, *i.e.*, the Relevant Photo,] is one of the photographs taken by [Delia]'s daughter on March 9, 2017.").)

Photos. (*Cf.*, 56.1 Counter, ¶28 (identifying Pls.' Exs. 2-8), *with* 56.1 Reply, ¶28 ("Costco denies that the premises were in the same condition as the photographs, as the photographs were not taken on the date of the accident."); *see also* 56.1 Reply, ¶29 (denying that there is a tripping hazard depicted in the photographs identified as Pls.' Exs. 2-6), ¶30 (denying that it created the conditions depicted in the photographs identified as Pls.' Ex. 3), ¶31 (as to the Relevant Photo, "den[ying] that there was a condition" or that it had notice of any condition).)

Wendy also testified that when she exited the Warehouse on March 9, 2017, she asked a Costco employee if she had seen her mother fall or knew where she had fallen, *to wit*:

> Q:     When you asked her if she saw anything about your mother's fall what was her response?
> A:     *She knew of it.*
> Q:     Did she know where she fell?
> A:     *She just pointed.*
> Q:     Where did she point to?
> A:     She pointed to the right where there was a stain.
> Q:     Did she say anything when she pointed or did she just point?
> A:     That was pretty much all I remember her saying.
> * * *
> Q:     Did she walk you over to the location?
> A:     No, she was checking people out.
> Q:     So[,] *she pointed to a general area*, correct?
> A:     *Yes.*
> Q:     Can you describe that area that she pointed to?
> A:     To the right. Outside of the doors to the right.

(Wendy Depo. 18:12-22, 19:9-15 (emphasis added); *see also id.* at 17:10-18:11 (identifying the employee as a female who checks customers' carts at the door, but stating she never learned the employee's name); *see also* 56.1 Counter, ¶33 (putting forth "[t]hat one or more of Defendant's employees made statements to Wendy . . . and Delia . . . , respectively, acknowledging that other

people had tripped in the same area as Delia . . . before [the Accident] and that Defendant was

aware of such prior incidents" (citing Delia Aff., Wendy Aff.).[7])  However,

> Costco c[ould] neither admit nor deny that Wendy . . . spoke with
> purported Costco employees about the accident or accidents in
> general as [she] failed to identify the employee(s) with any
> specificity.  Costco denie[d] that it was aware of any prior similar
> accidents.  Costco denie[d] that any Costco employee stated that
> other people tripped in the same area as [Delia] before [the
> Accident].

(56.1 Reply, ¶33.)

### B. Procedural Background

On May 22, 2017 Plaintiffs filed their Verified Complaint (dated and verified May 10,

2017) in state court, alleging Delia fell when entering the Warehouse and sustained serious

injuries, which fall was caused by Costco's negligent design, construction, and maintenance of

the parking lot area adjoining the entranceway into the Warehouse.  (*See* Complaint, ¶8.)  Costco

removed the action to this Court on July 5, 2017 (*see* ECF No. 1) and filed its Answer on July

10, 2017 (*see* ECF No. 6).  After protracted discovery, Costco moved for summary judgment.

### C. The Parties' Positions

#### 1. Costco's Position

Costco's primary argument in support of its Summary Judgment Motion is that Delia is

unable to identify the location or cause of her fall, which is fatal to her action because to let the

action proceed would be to speculate that Costco's alleged negligence proximately causing

Delia's injuries.  (*See* Support Memo at 3 (quoting *Patrick v. Costco Wholesale Corp.*, 77

A.D.3d 810 (2d Dept. 2010)("A plaintiff's inability to identify the cause of the fall is fatal to the

cause of action, because a finding that the defendant's negligence, if any, proximately caused the

---

[7]  (*See infra* note 11.)

plaintiff's injuries would be based on speculation.")); *see also id.* at 4-5 (citing and quoting record evidence supporting contention that "Plaintiffs . . . cannot either identify the actual cause of [Delia's] fall or submit any evidence identifying the cause").) Costco maintains "[t]here is no admissible evidence whatsoever establishing what caused the [W]hite [M]ark to be on the sidewalk or connecting the [W]hite [M]ark to the accident location" (*id.* at 7), and that the existence of the White Mark "is based on hearsay and pure speculation by [the Haxtons'] daughter." (*Id.*; *see also id.* at 8.) Defendant contends "[t]here is no evidence in this case to show that [Delia] tripped over anything other than her own two feet, or that she merely lost her balance" for which Costco cannot be held liable. (*Id.* at 8.)

Costco further argues that, to the extent Delia could identify a known defect which caused her fall, such alleged defect is trivial as a matter of law. (*See id.* at 9.) It asserts that after the examination of all the admissible evidence in the record, "including the 'width, depth, elevation, irregularity, and appearance of the defect, along with the 'time, place, and circumstances' of the injury,'" the alleged defect here is not actionable. (*Id.* (quoting *Estrella-Jones v. United States*, No. 13-cv-5454, 2016 WL 7243540 (E.D.N.Y. Dec. 14, 2016), *aff'd*, 706 F. App'x 28 (2d Cir. Dec. 14, 2017)(summary order)); *see also id.* at 10-11, 12 ("[A]ny alleged defect, which [Delia] cannot even connect to the cause of her fall, is trivial and, therefore, not actionable as a matter of law.")

Costco also contends that the Plaintiffs cannot make out a *prima facie* case because Costco neither created nor had actual or constructive notice of the alleged condition which caused Delia's fall. (*See id.* at 13-15; *cf.*, Complaint, ¶8 (identifying the alleged condition as, *inter alia*, an uneven entryway).) Reiterating that Delia is "unable to identify where she fell or what caused her to fall, which is fatal to her claim," the Company further asserts that the

Plaintiffs have "not put forth any evidence that [Costco] created or had actual or constructive notice of such condition." (*Id.* at 14; *see also id.* at 15 ("Here, there is no evidence whatsoever to adduce what the actual condition was that caused [Delia] to fall or that such condition was a known dangerous defect constituting a tripping hazard.").)

Finally, the Company seeks to preclude the testimony and reports of Plaintiffs' proffered experts (*see id.* at 16), arguing that neither of Plaintiffs' experts are qualified, lacking sufficient relevant expertise (*see id.* at 18 (re: Besemer), 22 (re: Fellman)), and that as to their reports: Besemer's "is not founded in fact, is conclusory, speculative and wholly contradictory to [Delia]'s testimony" (*id.* at 19); and Fellman's "is conclusory, speculative and not based on fact or reliable methodology" (*id.* at 22; *see also id.* at 23 ("The details Mr. Fellman relied upon in forming his opinion were provided solely by [Delia]'s counsel. Plaintiff and her husband testified that they never spoke with Mr. Fellman about the cause or location of the accident." (citations omitted))). Moreover, Costco contends that "Fellman should also be precluded from testifying and his report should not be considered as he maintains a bias," because he was previously represented by Plaintiffs' counsel when named as a defendant in an ADA-violation case and his work in this case "was done gratis as a favor." (*Id.* at 24.)

2. Plaintiffs' Position

Plaintiffs counter that they have sufficiently identified the location and cause of Delia's fall, arguing "[k]nown facts coupled with logical deductions and reasonable inference demonstrate with little doubt that Delia . . . tripped when her foot caught on the sidewalk edge as she transitioned from the asphalt parking area to the sidewalk . . . ." (Opp'n at (unnumbered) 1 (citing Ex. 4); *see also id.* at 3 (stating Delia's "claim as to where and how she fell emanate from reasonable inferences drawn from known facts," including photographs of the White Mark as

"one indication as to where the accident occurred," as well as the Haxtons' "independent recollections" (citing Delia Aff. and Thomas Aff.[8] (ECF No. 50-1 at 5-7))).) The Haxtons argue that: they "need only prove that it was 'more likely' or 'more reasonable' that the alleged injury was caused by the [D]efendant's negligence than by some other agency" (*id.* at 4 (quoting *Distribuidora Nacional de Disco of N.Y., Inc. v. Rappaport*, 92 A.D.2d 559 (2d Dept. 1983); *Wragge v. Lizza Asphalt Contr. Co.*, 17 N.Y.2d 313, 321 (1996))); and that "[o]n the evidence . . . presented, it is likely and reasonable to conclude that [Delia]'s foot caught the sidewalk edge as she transitioned from the asphalt parking area to the sidewalk . . . [which] conclusion can readily be reached without engaging in 'pure speculation'." (*Id.* at 4-5). In further support of their "reasonable inference" argument, the Haxtons rely upon the Relevant Photo, which supposedly captures the White Mark from which the Plaintiffs contend a "[a] jury could reasonably infer . . . is lighter than the surrounding concrete, because that area of the sidewalk had recently been cleaned and that in all likelihood it was Delia Haxton's blood which [had been] cleaned away two days earlier." (*Id.* at 5.)

The Haxtons contend that "[t]he 'trivial defect' exception is intended to exclude from tort liability minor, inconsequential physical defects that would be virtually impossible for someone in control of property to discover or prevent" or "could only have been guarded against by the exercise of extraordinary care and foresight." (*Id.* at 7 (citations and internal quotation marks omitted).) Plaintiffs argue that a jury "could readily find that the condition was not so obvious" "[f]rom the perspective of a reasonably prudent pedestrian" because the two surfaces where Delia's fall allegedly occurred were "both worn, dirty and wet" and Costco negligently created the condition and failed to take precautions, *e.g.*, providing a visual demarcation where the two

---

[8] (*See infra* at Part III.B at pp. 15-16.)

surfaces abutted.  (*Id.* at 9.)  They contend that "[n]either extraordinary care or [*sic*] foresight were [*sic*] needed to reduce or eliminate the risk which Defendant created here."  (*Id.*)

Plaintiffs also argue that there was evidence of both actual and constructive knowledge of the alleged defective condition.  Plaintiffs claim that Costco had actual notice as the creator of the condition.  To support that position, the Haxtons rely upon the Depo. Photos as evidence that "sufficiently demonstrate[] that the condition at issue was created by design and was in existence over a significant length of time such that the Defendant would[,] in the exercise of reasonable care[,] have acquired knowledge thereof."  (*Id.* at 10 (further asserting, "[p]hotographs may be used to prove notice of an alleged defect shown in the photographs, provided the photographs were taken reasonably close to the time of the accident, and there is testimony that the condition at the time of the accident was substantially as shown in the photograph" (citations omitted)).)  They also contend that "one or more store employees acknowledged that there were prior tripping incidents and that management was aware of the conditions."  (*Id.* at 11 (footnote omitted).)

Finally, Plaintiffs assert that their experts are qualified to express opinions regarding what they observed in the Depo. Photos.  The Haxtons acknowledge that because Costco "redid the parking lot after the accident and before Plaintiffs' experts were engaged" the experts' opinions were based upon the Depo. Photos as opposed to actual site visits (*id.* at 12; *see also id.* at 13), but argue that Plaintiffs' verifications of said Photos provide a sufficient bases for their experts to rely upon them in rendering their opinions.  (*See id.* ("It is sufficient that Plaintiffs themselves have identified the area depicted by the photographs as the place where Delia . . . fell.").)  Moreover, since Plaintiffs' experts were "code officials", they are were able to discern, not merely speculate, as to what constituted an "unsafe condition".  (*See id.* at 13.)

III.    Discussion

*A. Applicable Standards*

1.  Motion for Summary Judgment

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018) (quoting Fed. R. Civ. P. 56(a)); *accord Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018).   In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); *see also Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2677 (2009) ("On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (emphasis added; internal quotations and citation omitted)).

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the non-moving party," *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (quotations, alterations and citation omitted), and "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019) (quotations and citation omitted); *see also Hancock v. County of Rensselaer*, 823 F.3d 58, 64 (2d Cir. 2018) ("In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party.").   "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

issue for trial." *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)); *accord Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (quotations, brackets and citation omitted); *accord Jaffer*, 887 F.3d at 114. "[W]hen the moving party has carried its burden[,] . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [,]" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec.*, 475 U.S. at 586-87), and must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted). The nonmoving party can only defeat summary judgment by "adduc[ing] evidence on which the jury could reasonably find for that party." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012) (quotations, brackets and citation omitted). "'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient' to defeat a summary judgment motion[,]" *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)), and "[a] court cannot credit a plaintiff's merely speculative or conclusory assertions." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012); *see also Federal Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (quoting *Fletcher v. Alex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995))); *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) ("While we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party, . . . conclusory statements,

conjecture, or speculation by the party resisting the motion will not defeat summary judgment[.]"

(quotations, alterations and citations omitted)). Since "there is no issue for trial unless there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party[,]

. . . [i]f the evidence is merely colorable, . . . or is not significantly probative, . . . summary

judgment may be granted." *Anderson*, 477 U.S. at 249-50 (quotations and citations omitted).

### 2. Negligence Under New York State Law[9]

> Under New York law, a plaintiff asserting a negligence
> claim must demonstrate[:] "(1) a duty owed by the defendant to the
> plaintiff; (2) a breach thereof; and (3) injury proximately resulting
> therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir.
> 2006) (internal quotation marks omitted). In the context of
> premises liability and slip and fall cases, "the plaintiff must
> demonstrate that the landowner created the condition that caused
> the injury, or that the landowner had actual or constructive notice
> of the condition." *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F.
> Supp.2d 188, 192 (S.D.N.Y. 2004); *see Gorecki v. Painted Pony
> Championship Rodeo, Inc.*, 6 F. App'x 103, 105 (2d Cir. 2001)
> (summary order) (proving breach of duty requires showing
> existence of dangerous condition and that defendant either created
> it or had actual or constructive notice of it). While in New York
> state court the Defendant would have to demonstrate that it neither
> created the condition nor had notice of it, in federal court the
> Defendant, as the moving party, may point to the absence of
> evidence that it caused or had notice of the hazard and thereby shift
> the burden to the Plaintiff to create an issue for trial through
> specific factual assertions. *Doona v. OneSource Holdings, Inc.*,
> 680 F. Supp.2d 394, 400-01 (E.D.N.Y. 2010). In other words, in
> federal court the absence of evidence at the summary judgment
> stage redounds to the detriment of the plaintiff, not the defendant.

*Santora v. Costco Wholesale Corp.*, No. 17-cv-4415, 2018 WL 5886442, at *3 (S.D.N.Y. Nov. 8,

2018); *Stephanides v. B.J. Wholesale Club, Inc.*, No. 12-cv-083, 2013 WL 16994901, at *3

(E.D.N.Y. Apr. 18, 2013)("A plaintiff seeking to establish a prima facie case of negligence must

---

[9] The parties' briefs both assume that New York substantive law applies. Indeed, when a federal
district court in New York sits in diversity in a slip-and-fall case, it applies the substantive law of
the State of New York. *See Czochanski v. Tishman Speyer Props., Ltd.*, 45 F. App'x 45, 46 (2d
Cir. 2002)(citing *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999)).

show: (1) the defendant owed a duty to the plaintiff to exercise reasonable care; (2) the defendant

breached that duty; and (3) the plaintiff was injured as a result of the defendant's breach."

(citation omitted)). "Under New York law, '[i]n order for a plaintiff in a slip-and-fall case to

establish a prima facie case of negligence against the property owner, the plaintiff must

demonstrate (1) that the defendant created the condition that caused the accident, (b) that the

defendant had actual knowledge of the condition, or (c) that the defendant had constructive

notice of the condition.'" *Khalil-Mirhom v. Kmart Corp.*, No. 12-cv-5512, 2014 WL 173415, at

*4 (E.D.N.Y. Jan. 13, 2014)(quoting *Casierra v. Target Corp.*, No. 09-cv-1301, 2010 WL

2793778, at *2 (E.D.N.Y. July 12, 2010); further citations omitted).

### 3. Trivial Defects Under New York State Law

> [A] property owner may not be held liable in damages for
> "trivial defects on a walkway, not constituting a trap or nuisance,
> as a consequence of which a pedestrian might merely stumble, stub
> his toe, or trip over a raised projection." *Marinaccio v.
> LeChambord Rest.*, 246 A.D.2d 514, 667 N.Y.S.2d 395, 396 (N.Y.
> App. Div. 1998)(relying on *Trincere*, which held that a one-half
> inch elevation of a cement slab in the plaza area of a municipal
> building was not actionable as a matter of law).
>         To determine whether a defect is too trivial to be negligent,
> the court should consider the "time, place, and circumstances" of
> the injury, in addition to dimensions and appearance of the defect.
> *Trincere*[ *v. County of Suffolk*], 665 N.Y.S.2d 615, 688 N.E.2d at
> 490 [(N.Y. 1997)]. In some instances, however, "the trivial nature
> of the defect may loom larger than another element" and therefore
> "[n]ot every injury allegedly caused by an elevated brick or slab
> need be submitted to a jury." *Id.* [further citations omitted]. New
> York courts often rely on the judge's examination of photographs
> to determine whether a defect is trivial as a matter of law. *See,
> e.g., Nathan* [*v. City of New Rochelle*], 723 N.Y.S.2d [402,] 403
> [(N.Y. App. Div., 2d Dept. 2001)(further citations omitted)].

*Czochanski v. Tishman Speyer Props,, Ltd.*, 45 F. App'x 45, 47 (2d Cir. 2002)(affirming granting

summary judgment in defendant property owners' favor on plaintiff's slip and fall action).

*B. The Instant Case*

As an initial matter, Delia and Thomas cannot rely upon their respective Affidavits to create any disputed facts as to the cause of Delia's Accident when Delia testified as to her uncertainty of its cause and Thomas testified to not witnessing the fall. "It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Colvin v. Keen*, No. 13-cv-3595, 2016 WL 5408117, at *3 (E.D.N.Y. Sept. 28, 2016). Indeed,

> a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)(examining omission in four-day deposition); *Martin v. City of New York*, 627 F. Supp. 892, 896 (E.D.N.Y. 1985)(examining direct contradiction between deposition and affidavit). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma*, 410 F.2d at 578. Thus, factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not "genuine" issues for trial. *Id.*

*Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996); *see also In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013)(holding that a party is prohibited "from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony"); *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony."); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999)( "[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement . . .

without explaining the contradiction or attempting to resolve the disparity."); *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995)("[I]t is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." (quotations and citation omitted)); *Pierre v. Hilton Rose Hall Resort & Spa*, No. 14-cv-3790, 2016 WL 4742281, at *10 (E.D.N.Y. Sept. 12, 2016)(finding plaintiff unable to produce competent evidence to defeat defendant's summary judgment motion where plaintiff's affidavit contradicted his deposition testimony); *Ciliberti v. Int'l Bhd. of Elec. Workers Local 3*, No. 08-cv-4262, 2012 WL 2861003, at *11 (E.D.N.Y. July 10, 2012)(rejecting plaintiff's attempt to create disputed issues of fact via affidavit, when his prior deposition testimony foreclosed any such disputes); *Jeffrey v. Montefiore Med. Ctr.*, No. 11-cv-6400, 2013 WL 5434635, at *15 (S.D.N.Y. Sept. 27, 2013) (finding, where inconsistencies existed between a non-movant's affidavit and corresponding deposition testimony, which inconsistencies the non-movant party made no effort to reconcile or otherwise explain, the court did not consider those statements)(collecting cases). Having compared Wendy's deposition testimony to her Affidavit, the same conclusion is warranted as to Wendy's Affidavit.

Costco's position is that because Delia does not know why or where she fell, she cannot make out a *prima facie* case of showing the existence of a dangerous or defective condition; moreover, as a matter of law, any defect was trivial, open and obvious, and it has not been shown that Costco created or had knowledge of the alleged condition. The Court agrees with the Company's first contention: pursuant to "the peculiar facts and circumstances of [this] case" *Trincere v. County of Suffolk*, 665 N.Y.S.2d at 616, and, in particular, Delia's deposition testimony, Costco has established its *prima facie* entitlement to judgment as a matter of law because Delia's testimony demonstrated that she could not identify the cause of her fall. *See*

*Amster v. Kromer*, 150 A.D.3d 804 (N.Y. App. Div., 2d Dept. 2017)(collecting cases);

*Aristizabal v. Kostakopoulos*, 159 A.D.3d 860 (N.Y. App. Div., 2d Dept. 2018)(same). Indeed,

while it is true that "business proprietors have a duty to maintain their properties in a reasonably

safe condition," *Estrella-Jones*, 2016 WL 7243540, at *3 (quoting *DiPonzio v. Riordan*, 89

N.Y.2d 578, 582 (1997))(internal quotation marks omitted), it is also well-established that "[a]

plaintiff's inability to identify the cause of the fall is fatal to the cause of action because a finding

that the defendant's negligence, if any, proximately caused the plaintiff's injuries would be based

on speculation." *Aristizabal*, 159 A.D.3d at 860 (citing *Kudrina v. 82-04 Lefferts Tenants Corp.*,

110 A.D.3d 963, 964 (N.Y. App. Div., 2d Dept. 2013); *Dennis v. Lakhani*, 102 A.D.3d 651, 652

(N.Y. App. Div., 2d Dept. 2013)); *see also Amster*, 150 A.D.3d at 804 (same)(collecting cases).

In the instant case, Delia testified, *inter alia*: that when she was about to fall, she did not

feel, see or hear anything (*see* Delia Depo. Tr. 23:18-22); she did not know with which foot she

tripped (*see id.* at 23:23-23:2); although she knew she fell forward, she did not know if one of

her feet was still on the asphalt (*see id.* at 25:6-8); all she remembered was falling, but not the tip

of her toe or her foot catching on something (*see id.* at 25:15-22); and, she had no specific

recollection of catching her foot on a "lip" (*see id.* at 42:16-18; *see also id.* at 42:11-13

(testifying to having no prior knowledge of a "lip" being in the entryway)). Moreover, Delia's

deposition testimony also establishes that she does not know where she fell. For example, when

questioned about: the Depo. Photo B photographs, Delia could not identify the columns through

which she walked (*see id.* at 35:16-36:6); the Depo. Photos A & B photographs, Delia could not

point to the specific location where she fell (*see id.* at 36:7-10); the Relevant Photo, Delia

indicated two different spots as the possible sights of her fall and testified that she could not

specifically say where her foot tripped, although she believed it was the general area depicted in

the Photo (*see id.* at 38:12-39:24; *see also id.* at 43:10-18).  Similarly, Thomas could not identify the cause of his wife's fall or where it occurred.  For example, Thomas testified that: he believed Delia's foot touched the front of the "lip" of the sidewalk, but he did not see her foot contact it (*see* Thomas Depo. Tr. 19:2-15; *see also id.* at 25:15-21); as to Depo. Photo B depicting the Warehouse entryway, he could not identify where Delia fell (*see id.* at 21:12-16); and, he could not identify the columns between which Delia fell (*see id.* at 28:10-13).

A cursory review of the Depo. Photos[10] demonstrates that: between the column at the left corner of entryway vestibule and the column to its left, with the "No Parking" sign, the parking lot runs flush with the sidewalk (*see* Depo. Photo B); and, between the column with the "No Parking" sign and the column left of that, the sidewalk curves out and there is a height differential between the parking lot and the sidewalk (*see* Depo. Photos A & D).  While the Relevant Photo depicts the White Mark, height differential between the parking lot and the sidewalk, and a crack in the asphalt running perpendicular to the sidewalk, it does not depict any columns which would place that portion of the sidewalk in context to the Warehouse's entryway rendering its probative value nugatory.

Even if that were not so, to the extent the Plaintiffs rely upon the White Mark in the Relevant Photo to identify the location of Delia's Accident, that reliance is unavailing.  Other than speculation and conjecture *see, e.g.*, Wendy Aff., ¶7 ("When I got outside to the area where the woman had pointed, I saw what appeared to me to be an area which I discerned was recently

---

[10]  "Courts have often relied on photographs to determine whether or not a defect is trivial as a matter of Law."  *Czochanski v. Rockefeller*, No 00-cv-6626, 2001 WL 10006718, at *2 n.1 (S.D.N.Y. Aug. 31, 2001)(collecting cases), *aff'd, Czochanski v. Tishman Speyer Props., Ltd.*, 45 F. App'x 45 (2d Cir. 2002); *see also Schenpanski v. Promise Deli, Inc.*, 88 A.D.3d 982, 984 (N.Y. App. Div., 2d Dept. 2011)("Photographs which fairly and accurately represent the accident site may be used to establish that a defect is trivial and not actionable." (citations omitted).

cleaned.  The area was lighter as if bleach or another cleaning solvent had been applied to clean

the concrete." (citing Relevant Photo)), they have presented no admissible evidence that the

White Mark is connected to the Accident.  Wendy's theory that the White Mark was the result of

bleach used to clean Delia's blood after Delia's fall, emanated from a conversation she had with

an unidentified Costco employee (*see* Wendy Depo. 54:1-58:4) who merely pointed to a general

area outside the Warehouse entryway vestibule as the place where she had heard that Delia's

Accident had occurred (*see id.* at 18:12-22, 19:9-15).  Similarly, when being questioned about

the Relevant Photo, Thomas testified:

> Q:    Looking about three quarters of the way between the
>       asphalt and the flatbed cart, there's a [W]hite [M]ark in one
>       of the concrete flags, correct?
> A:    Yes.
> Q:    That you've indicated as a bleach stain?
> A:    Yeah.  Yes.
> Q:    You indicated it was to clean up blood, correct?
> A:    Yes.
> Q:    That was the blood from your wife?
> A:    Yes.
> Q:    *Were you present when the blood was cleaned up*?
> A:    *No.*
> Q:    *Are you basing your belief of where the [A]ccident
>       occurred on the white spot because you can picture the
>       blood in that location* or because someone told you
>       something . . . or something else?
> A:    *No.*
> Q:    *What are you basing it on*?
> A:    *I'm basing it on the stain.*
> Q:    The stain, itself?
> A:    Yes.
> Q:    *You believe that to be bleach*?
> A:    *Yes.*
> Q:    *Is that based upon your life experience*?
> A:    *Yes.*
> Q:    That spot was not present at the time of the [A]ccident?
> A:    No.
> Q:    Is there anything else in the [Relevant P]hoto . . . that you
>       can identify other than the white spot to show that you say
>       that this is where the [A]ccident occurred?

A:      No.

(Thomas Depo. 24:2-25:14 (emphasis added).)  Thus, based on his belief that the White Mark was created with bleach, which he speculates was used to clean up his wife's blood, *after* the Accident, Thomas surmised where Delia fell.  Yet, despite deposing Costco manager Fazio, who was called to the scene of the Accident after Delia fell (*see* Ex. Q. (Fazio Depo.) at 68:7-70:18), the Plaintiffs have not offered any evidence:  that blood was cleaned off the concrete after Delia's fall (*see*, Delia Depo. 40:15-17 (testifying she did not "see anyone clean up blood from Costco after [the A]ccident"), Thomas Depo. 24:14-16 (testifying to not being present when Delia's blood was cleaned up); *cf.*, Fazio Depo. 85:20-86:9 (regarding the Relevant Photo, testifying to "hav[ing] no idea" whether blood was cleaned off the concrete), 87:10-17 (testifying to having no recollection whether a "maintenance person was directed to clean blood up in the area that [Delia] fell")); or, other than Fazio's general testimony about calling a maintenance person (*see id.* at 86:20-87:2 (regarding Costco's cleaning protocol for blood removal, testifying that "if blood existed on the concrete" the standard procedure was to "call a maintenance person to clean up the blood")), regarding Costco's cleaning protocol for blood removal; or showing any chemical or solvent having been used on the concrete outside the Warehouse's entryway promptly after Delia's Accident, but before Wendy having taken the Depo. Photos (*cf. e.g.*, Fazio Depo. 111:20-25 (testifying to not knowing what type of solvent Costco would use to clean blood off the sidewalk), 112:10-15 (testifying to not knowing if the White Mark was created with bleach).  Conversely, Costco has presented evidence: from Fazio that viewing the Relevant Photo did not "refresh [his] recollection as to where or the vicinity of the area where [Delia] fell" (Fazio Depo. 87:18-24); and, from the Warehouse's Assistant General Manager that: (1) he does not know what caused the White Mark (*see* Ex. R (O'Connell Aff.), ¶5), (2) on March 7, 2017,

he "did not clean blood from the sidewalk nor did [he] request any Costco employees do so" (*id.* at ¶6), and (3) he is unaware "of any Costco employees cleaning blood from the sidewalk on or after March 7, 2017" (*id.* at ¶7).

Rather, based upon the Haxtons' testimony, Costco has established its *prima facie* entitlement to judgment as a matter of law. *See Bilska v. Truszkowski*, 171 A.D.3d 685, 686 (N.Y. App. Div., 2d Dept. 2019) ("In a slip and fall case, 'a defendant may establish its prima facie entitlement to judgment as a matter of law by submitting evidence that the plaintiff cannot identify the cause of his or her fall.'" (quoting *Buglione v. Spagnoletti*, 123 A.D.3d 867, 867 (N.Y. App. Div., 2d Dept. 2014); further citation omitted)); *Stevenson v. CBS Broadcasting, Inc.*, No. 110806/05, 2011 WL 247005 (N.Y. Sup. Ct., N.Y. Cnty. Jan. 19, 2011) (granting summary judgment in defendants' favor where plaintiff did not know what caused her to fall and "plaintiff [did] not present evidence connecting the alleged defect to her fall, rather than due to her own misstep")(collecting cases); *Estrella-Jones*, 2016 WL 7243540 (finding, after trial, that plaintiff failed to carry her burden of demonstrating defendant's liability for her injury where, *inter alia*, plaintiff stepped off a curb onto worn asphalt, tripped and fell, but she did not prove that the condition of the asphalt caused her injury); *cf., Tursi v. United Stated*, No. 13-cv-4756, 2019 WL 49964750, at *4 (E.D.N.Y. Oct. 7, 2019)(denying summary judgment where plaintiff offered evidence that his sandal slipped under a door saddle "preventing him from raising his foot, [which] was sufficient to permit a reasonable juror to conclude that this opening was the proximate cause of his fall"), *and D'Nelson v. Costco Wholesale Corp.*, No. 03-cv-219, 2006 WL 767866 (E.D.N.Y. Mar. 24, 2006) (denying Costco's summary judgment motion where, *inter alia*, plaintiff testified that she caught her foot between a metal plate and the warehouse floor causing her to fall to the floor).  Plaintiffs are unable to rebut Costco's claims because they

fail to identify with certainty where the Accident occurred and have resorted to speculation and conjecture, which is ineffective to defeat summary judgment. *See Bilska*, 171 A.D.3d at 686-87 (finding defendant met prima facie burden on summary judgment motion "by submitting the plaintiff's deposition transcript which demonstrated, prima facie, that [plaintiff] was unable to identify the cause of her fall without resorting to speculation" (omitting citations)); *see also, e.g., Kudrina*, 110 A.D.3d at 964 ("To impose liability upon the moving defendants for the plaintiff's injuries, there must be evidence showing the existence of a dangerous or defective condition . . . ."); *see also, generally Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 621 (2d Cir. 2016)("Generally, 'speculation by the party resisting the motion will not defeat summary judgment.'")(quoting *Kulal v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996)).

Even if, *arguendo*, Delia could identify a known defect that caused the Accident, upon the record presented, any such alleged defect would be trivial as a matter of law. Delia described the height differential in the location where she stepped from the asphalt to the concrete to be slight. (*See* Delia Depo. 29:21-30:2.) Similarly, Thomas testified that the "lip" in the area where he believed Delia tripped was "about two fingers" in height (Thomas Depo. 27:3-19). Drawing all inferences in the Plaintiffs' favor, these proffered height differentials fail to move beyond the realm of speculation and vague guesses. Further, assuming the Court were to find credence in the height differential approximations offered by Plaintiffs' proffered experts,[11] *i.e.*, of

---

[11]  The Court declines to rely upon the reports of Plaintiffs' proffered experts, Fellman and Besemer (hereafter, "Experts"), (*see* Ex. O (Fellman's Report); Ex. P (Besemer's Report) (hereafter, collectively, the "Expert Reports")) because, even assuming, *arguendo*, that Fellman and Besemer qualified as experts, their supposed specialized knowledge is not helpful to this Court in determining whether the alleged condition was trivial as a matter of law. *See* Fed. R. Evid. 702(a); *see also Lara v. Delta Int'l Mach. Corp.*, 174 F. Supp.3d 719, 728, 729 (E.D.N.Y. 2016)("Ultimately, whether expert testimony is admissible at trial is a question of law which rests squarely within the broad discretion of the Trial judge." (omitting citations)); *In re M/V MSC FLAMINIA*, No. 12-cv-8892, 2017 WL 3208598, at *3 ((S.D.N.Y. July 28, 2017)("The

approximately 1-1/2 to 2 inches (*see* Ex. O (ECF No. 49-16) at 2, Ex. P (ECF No. 49-17) at 2),

that is not enough to defeat a finding of triviality as a matter of law, since a court is to "examine

*all of the facts presented*, including the 'width, depth, elevation, irregularity and appearance of

the defect along with the 'time, place and circumstances' of the injury.'" *Schenpanski*, 88

A.D.3d at 983 (quoting *Trincere*, 665 N.Y.S.2d at 615)(emphasis added). "[T]here is no

'minimal dimension test' or per se rule that a defect must be of a certain minimum height or

depth in order to be actionable," and "a mechanistic disposition of a case based exclusively on

the dimension of the sidewalk defect is unacceptable." *Trincere*, 665 N.Y.S.2d at 615; *see also*

*D'Nelson*, 2006 WL 767866, at *4 (quoting *Trincere*). However, "[c]ourts have granted

summary judgment to defendants in cases with height differentials and even sidewalk gouges as

wide as four inches and seven inches." (Support Memo. at 11 (citing *Czochanski*, 45 F. App'x

45; *Tzul*, 2014 WL 4773972).) *See also, e.g., Natjehbashem v. United States*, 828 F. Supp.2d

499, 507 (E.D.N.Y. 2011)(recognizing that "[w]here the dangerous or defective condition

---

overarching purpose of the Rule 702 inquiry is 'evidentiary relevance and reliability—of the
principles that underlie a proposed submission.'" (quoting *Daubert v. Merrell Dow Pharm.*, 509
U.S. 579, 595 (1993)). Moreover, it is questionable whether the Expert Reports "rest[] on a
reliable foundation and [are] relevant to the task at hand," *Lara*, 174 F. Supp.3d at 728 (quoting
*Daubert*, 509 U.S. at 597) considering, *inter alia*: (1) Plaintiffs were unable to identify with
certainty the location of the Accident (*see* 56.1 Stmt., ¶14; *cf.*, 56.1 Counter, ¶14), thereby
calling into question the necessity or usefulness of the Experts' overall opinions regarding the
design and condition of the alleged condition; (2) the Experts based their respective Reports
upon reviewing photographs taken by Plaintiffs' counsel two months after the Accident
(hereafter, the "Counsel Photos") since, by the time the Experts made site visits to the
Warehouse, the entryway had been modified; but, (3) the Counsel Photos in the record that
include measuring tapes, to indicate height differentials between the parking lot and the sidewalk
(*see* Exs. 5, 6, 9), lack any reference points that would provide the necessary context for
determining their location in relationship to the alleged condition, making reliance upon them
impractical and speculative. *See M/V MSC FLAMINIA*, 2017 WL 3208598, at *5 ("*Even
qualified experts must . . . base their opinions on reliable data* and a valid methodology."
(emphasis added; citation omitted)); *see also* Fed. R. Evid. 702(b) (stating that expert testimony
is to be "based on sufficient facts and data"); Fed. R. Evid. 702(c) (stating expert testimony is to
be "the product of reliable principles and methods").

alleged by a pedestrian is a height differential of approximately one inch (1"), New York courts, and courts applying new York Law, generally grant summary judgment dismissing the case")(collecting cases)

Here, no evidence has been put forth as to the width, depth, or irregularity of the purported defect. Nor have Plaintiffs presented any evidence that would show the alleged defect possessed the characteristics of a trap or nuisance. *See, e.g., Estrella-Jones*, 2016 WL 7243540, at *4-5 (discussing the characteristics of a trap or snare and finding that worn pavement with a shallow depression in an open area "is manifestly unlike the paradigmatic trap or snare"); *see also Tesoriero v. Brinckerhoff Park, LLC*, 5 N.Y.S.3d 261, 263 (N.Y. App. Div. 2015)("A condition that is ordinarily apparent to a person making reasonable use of his or her senses may be rendered a trap for the unwary where the condition is obscured or the plaintiff is distracted" (quoting *Oldham-Powers v. Longwood Cent. Sch. Dist.*, 997 N.Y.S.2d 687, 688 (N.Y. App. Div. 2014)). Instead, the record evidence concerning the time, place and circumstances of the Accident shows: it occurred at approximately 10:30 a.m. (*see* Delia Depo. 10:3-5; Thomas Depo. 9:19-22), which is during the daylight; the parking lot and sidewalk were different colors (*see* Delia Depo. 18:25- 19: 10); it was a misty day, but "[n]ot heavy rain" (Delia Depo. 12:9-10), and Delia could not say whether the moisture from the mist caused the asphalt to look darker (*id.* at 41:19-24);[12] Delia was slightly in front of Thomas and not holding hands with him (*see id.* at 21:7-23; *see also* Thomas Depo. 13:8-16); there were no customers or cars in front of Delia blocking her view as she crossed the parking lot towards the sidewalk (*see* Delia Depo. 20:5-21:2, 22:18-23); Delia was not pushing a shopping cart (*see id.* at 19:15-17), but was carrying a

---

[12] Neither Delia not Thomas testified that the parking lot or sidewalk were slippery immediately before the Accident occurred; nor have they presented any admissible evidence as to same.

purse at her side, which did not block her view (*see id.* at 19:18-19:4); Delia was not carrying her

cell phone, so was not distracted by same (*see id.* at 22:2-6); despite poor eyesight, Delia was

wearing her glasses (*see id.* at 28:2-4, 55:25-56:5); and, Delia was wearing Easy Spirit® slip-on

shoes, with a lift, but no heels (*see id.* at 53:3-26). Accordingly, even if the Court were to infer

that the height differential in this case was upwards of two inches, the nature of that differential,

considering the time, place and other circumstances surrounding the Accident (*i.e.*, the Accident

occurred: during daylight hours, at approximately 10:30 a.m.; while Delia was walking from the

darker colored parking lot to the lighter colored sidewalk, unobstructed, towards the entryway

she had previously used many times over a 30-year span; after, "144 Costco member [had]

entered the [W]arehouse, without incident . . . before 10:30 a.m." (Ex R (O'Connor Aff. (ECF

No. 49-19)), ¶8)),[13] renders it too trivial to be actionable as a matter of law. *See, e.g.,*

*Czochanski*, 45 F. App'x at 47 (finding proper the lower court's *Trincere* triviality analysis,

which "considered not only the defect's dimensions, but also the circumstances surrounding the

accident"; affirming granting of summary judgment in defendant's favor); *Estrella-Jones*, 2016

WL 7243540, at *4-5 (finding, after conducting *Trincere* triviality analysis, "[n]othing about the

time, place, or circumstances of the accident makes th[e] gradual depression in worn pavement

unreasonably hazardous or dangerous"; concluding trivial defect was not actionable); *Tzul*, 2014

WL 4773974, at *4 (overruling plaintiff's objection to magistrate judge's recommendation that

crack in sidewalk was too trivial to be actionable since it was clear magistrate judge had

"considered the totality of the facts presented, and not simply the height differential" (collecting

---

[13] Costco also presented evidence that: on average, approximately 2,600 persons enter the Warehouse daily (*see* Ex. R, ¶9); since 2015, "there ha[d] been no other complaints regarding the asphalt, sidewalk or curb in front of the [W]arehouse" (*id.* at ¶¶10; *see also id.* at ¶3); and, a search of the Warehouse's records showed that "there were no prior trip and fall accidents involving the asphalt, sidewalk or curb in front of the [W]arehouse" (*id.* at ¶11).

cases); adopting report and recommendation "that crack in the sidewalk at issue in th[e] case is too trivial to constitute a defective or dangerous condition giving rise to liability under New York law").

In sum, because they do not know where, with certainty, Delia fell, any admissible evidence proffered to show the existence of a dangerous or defective condition is ineffective as conjecture or speculation, which is insufficient to defeat a summary judgment motion. Even if that were not so, upon the record presented, any defect in the height differential between the parking lot and the sidewalk was trivial in nature, rendering it nonactionable as a matter of law. Having found Costco is entitled to summary judgment in its favor based upon the record presented, the Court need not consider the Company's "open and obvious" argument or Plaintiffs' opposition thereto. To the extent not explicitly addressed, the Court has considered Plaintiffs' remaining arguments in opposition to the Summary Judgment Motion and finds them to be without merit.

IV.    Conclusion

Accordingly, IT IS HEREBY ORDERED that Costco's Summary Judgment Motion is granted; the Clerk of Court is directed to enter judgment in Defendant's favor, dismiss Plaintiffs' Complaint, and then close this case.

IT IS FURTHER ORDERED that the Parties' joint request to adjourn the March 18, 2020 Status Conference (*see* ECF No. 54) is granted to the extent it is marked off the Court's calendar.

Dated this 16th day of March 2020 at Central Islip, New York.

_/s/_*Sandra J. Feuerstein*__
Sandra J. Feuerstein
United States District Judge

26